## AVERY *et al. v.* SAMUELS.

No. 12156. FEBRUARY 18, 1938.

*C. E. Sutton,* for plaintiffs in error. *W. A. Slaton,* contra.

George Samuels brought a petition against Lunceford, sheriff of Wilkes County, to recover $180 alleged to have been taken by the sheriff from the persons of John and Mary Avery, after their arrest for a crime not stated, alleging that John and Mary Avery are confederates; that the money found on them, to the extent of $180, is the identical money of which he was defrauded by John Avery and another negro whom the plaintiff does not know; that the two prisoners have assigned certain portions of the fund to their attorneys as fees for representing them in criminal proceedings pending in Wilkes County and elsewhere, and they intend to deliver the balance to the officers in payment of fines and costs in the event of their conviction; and that if such payments are made the plaintiff will be without a remedy, as John and Mary Avery are insolvent except for the fund taken from their persons by the sheriff. The plaintiff prayed judgment against the Avery negroes for $180, and that they and the sheriff be enjoined from disposing of the fund until final judgment in the case.

John and Mary Avery filed answers denying all the allegations. Lunceford did not answer.

On the trial the plaintiff testified that he was defrauded by two negroes unknown to him. One of them engaged him in conversation, and while conversing they saw another negro pick up a wallet.

A dispute arose as to whether the negro picked up a pocketbook. The finder walked away, but returned shortly and said there was $35 apiece for the three negroes if they would say nothing about it. The negro who first engaged the plaintiff in conversation then threw his arms around his neck and said, "Brother, the Lord has been good to us to-day." After that the plaintiff became dazed. Later, the finder returned and said there was $700 apiece for them, but much of the find consisted of bonds, and it would take $200 to get the bonds cashed. The plaintiff agreed to let him have $180 for that purpose. He had sold some cotton and seed for about $65. The balance he got from the bank where he had a checking account. He gave the negro the $180 in $20 bills. The negroes disappeared without bringing him any money back. The next day John and Mary Avery were arrested on some charge, and the plaintiff reported to the sheriff that he had been swindled. The sheriff sent for the plaintiff to see if he could identify the negroes under arrest. He was unable to identify John Avery at first; said he was not the negro who swindled him. He said he had never seen the woman before, and that there was no woman in the case. Later, after the sheriff took from the prisoners about $250, the plaintiff identified John Avery as the finder of the wallet, and explained that he did not get a good view of him the first time. These facts were testified to by the sheriff and his deputy. The plaintiff was unable to identify the money found on the prisoners by the sheriff as the identical money which he let the swindlers have.

John and Mary Avery did not testify on the trial. Their attorney, in verifying the answers filed by them, swore that they were not readily accessible, being on the chain-gang, one of them on the prison farm near Milledgeville.

The jury returned a verdict for the plaintiff. John and Mary Avery filed a motion for new trial, which was overruled, and they excepted.

Grice, Justice. 1. The equity in the petition, if any, consisted in an allegation that the defendants had in their possession the identical money of which the plaintiff was defrauded; and secondly, that a third party, the custodian of the money, would, unless enjoined, deliver the same to other persons, in a certain contingency. The proof failed to support either allegation.

2. The evidence likewise failed to show what part of the money found in the possession of Mary Avery was the property of John Avery, there being no proof to show that all the money found on the person of Mary should go to discharge a debt of John's.

3. It follows that the verdict is without evidence to support it. The judgment refusing a new trial must be

*Reversed. All the Justices concur.*